Anthony WILLIAMS,
Petitioner-Appellant,

v.

STATE of Indiana,
Respondent-Appellee.

No. 2–1184A360 [1].

Court of Appeals of Indiana,
First District.

May 8, 1985.

Rehearing Denied June 19, 1985.

1. Diverted from the Second District by direction of the Chief Judge.

Susan K. Carpenter, Public Defender, Sheila K. Zwickey, Sp. Asst., Indianapolis, for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant, Anthony Williams (Williams), appeals the denial for relief under his petition for post-conviction relief under PC Rule 1.

We affirm.

## STATEMENT OF THE FACTS

On July 3, 1968, Williams, age 16, was charged with robbery after a waiver from juvenile court. On July 10, after attorney William Laswell entered an appearance for him, Williams entered a plea of not guilty. Then on July 18, 1968, attorney Chester Wilson, employed by Williams' parents, entered an appearance for him, and on August 1, 1968, Williams, with attorney Wilson and his parents present, entered a plea of guilty to robbery. The record of the proceedings before the Honorable Saul I. Rabb reflected that Williams was satisfied with his attorney; was advised of the penalty of 10 to 25 years but only 1 to 10 years under the Minor's Act; understood his right to a jury trial; acknowledged the voluntariness of the plea; and acknowledged that no reason existed why sentence should not be pronounced. The court also conducted an extensive factual determination from witnesses. The record also reflects that during juvenile proceedings held on July 1, 1968, attended by Williams, his parents and counsel, the court advised him that he had a right to counsel, the right to remain silent, the right to cross-examine, the right to present evidence, and the right to have the assistance of the court in procuring the attendance of witnesses.

At the conclusion of the July 1 juvenile hearing, the court issued a waiver order in which he found that Williams was 16 years old and was charged with an offense which, if committed by an adult, would be robbery. The trial judge found that the case had specific prosecutorial merit; if Williams were retained in juvenile court, no disposition was available that was reasonably calculated to effect rehabilitation in that the offense is heinous and part of a repetitive pattern of juvenile conduct consisting of second degree burglary, ungovernability, offenses against properties, malicious trespass, curfew, and robbery over a period of 4 years for which he was

placed on probation 4 times, and finally sent to the Boys School. The order concluded that the best interest of the public welfare and the protection of the public security required that Williams be tried as an adult offender.

Williams filed his PC 1 petition on May 3, 1985, sixteen years after the proceedings and long after the sentence had expired. Though it is not stated, the current proceeding is an apparent attempt to erode the underlying felonies supporting a habitual offender conviction. Williams correctly alleges in his petition that the trial court failed to advise him of the privilege against self-incrimination and the right to confront accusers. At the conclusion of the hearing on the PC 1, where the only evidence presented was the transcript of the guilty plea hearing and the waiver order, the trial court made the following order:

"The court finds that the law is with the state and against the defendant and denies the petition. The defendant is remanded back to the institution as quickly as possible."

### ISSUES

Williams presents the following issues on appeal:

I. Insufficiency of the findings of facts and conclusions of law as required by PCR 1, Sec. 6.

II. Whether Williams was properly advised of his privileges against compulsory self-incrimination and his right to confront his accusers at his guilty plea hearing on August 1, 1968.

III. Whether Williams had been properly waived from juvenile court, thereby fairly conferring jurisdiction on the Marion Superior Court.

### DISCUSSION AND DECISION

*Issue I. Findings and Conclusions.*

Specific findings of facts and conclusions of law are mandated by PCR 1, Sec. 6. *Lowe v. State,* (1983) Ind. 455 N.E.2d 1126; *Davis v. State,* (1975) 263 Ind. 327, 330 N.E.2d 738; *Cabell v. State,* (1980) 274 Ind. 683, 414 N.E.2d 293. Nevertheless, we are not foreclosed from determining the ultimate issues where the underlying facts are not in dispute and the parties have addressed the issues. In the interest of judicial economy, we may make a determination of the issues where they are clear. *Lowe v. State, supra; Sims v. State,* (1981) Ind.App., 422 N.E.2d 436. Here the issues are clear; that is, the effect of a pre-*Boykin* plea where advisements are insufficient and whether the order of waiver is sufficient on its face. We shall proceed to rule on both those issues.

### Issue II: Compliance with Pre-Boykin Procedure.

In *Boykin v. Alabama,* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 the Supreme Court of the United States held that the record must affirmatively show advice of the right of privilege against compulsory self-incrimination and the right to confront one's accusers and a knowing and intelligent waiver thereof.

Indiana decisions, while not definitive of the ultimate parameters of the effect of that case on pre-*Boykin* pleas, have held that *Boykin* is not to be applied retroactively.

In *Conley v. State,* (1972) 259 Ind. 29, 284 N.E.2d 803, a pre-*Boykin* case, a defendant, charged with assault and battery with intent to kill, appeared at his hearing without counsel where affidavits and the relevant statutes were read to him. He entered a plea of not guilty at that time; however, at a later hearing, he appeared with counsel and moved the court to withdraw the not guilty plea and enter a plea of guilty. *Conley, supra,* at 805–06. The motion was granted, but before the plea was entered, the court again read the affidavit to the defendant, who acknowledged that he understood the charges. Making no further advisements, the court thereupon entered sentence.

In reviewing and affirming the denial of the PC 1 in which the defendant had re-

quested permission to withdraw his plea of guilty, the court noted that the defendant based his case solely upon the record and made no attempt to avail himself of his attorney's testimony, though the attorney filed an affidavit in opposition to a motion to correct errors showing that he advised Conley of his constitutional rights. *Id.* at 807. The supreme court distinguished pre-*Boykin* duties devolving upon a court in a situation where the defendant was represented by counsel, and a situation wherein he was not so represented. In the latter instance, more specificity is required, but such standards are not extended to a situation where the defendant is represented by counsel. A presumption exists, the court continued, that counsel was competent and that he advised defendant of his rights. *Id.* at 808. It follows, the court concluded, that absent an allegation of ineffective counsel, the supreme court would presume that counsel performed his duty. *Id.* at 809.

Another pre-*Boykin* guilty plea case is *Campbell v. State*, (1975) 262 Ind. 594, 321 N.E.2d 560. In *Campbell*, the trial judge, Saul I. Rabb, the same judge as in the case at bar, in a colloquy not dissimilar to the one in this transcript, conducted a guilty plea hearing in 1966 where the defendant, pursuant to a plea agreement, entered a guilty plea to second degree murder. *Campbell, supra*, at 562. Pursuant to the trial court's questioning, the defendant acknowledged he did not want a jury, was satisfied with the judge, wanted to withdraw his plea of insanity, and was not coerced or induced into entering a guilty plea. The court advised him of the penalty and made a factual determination from testimony of sworn witnesses. However, the court did not advise him that he could not be compelled to testify against himself, or that he was entitled to confront witnesses, the same two omissions involved here. Argument was made that absence of those two advisements rendered the plea fatal under the *Boykin* doctrine. Our supreme court, applying the rule stated in *Conley*, said:

"However, for the reasons expressed in *Conley v. State*, (1972), 259 Ind. 29, 284 N.E.2d 803, we decline to follow *Boykin* as was done in *Brimhall* and *Bonner*. We agree that the failure of a record to show affirmatively that a trial court advised the defendant of each of his constitutional rights as enumerated in Boykin, or that he was otherwise aware of such guaranties, is reversible error in cases arising subsequent to *Boykin*. However, this defendant's guilty plea came two years before *Boykin* was decided. We are, therefore, at liberty to apply the rule of *Conley v. State, supra*. In *Conley*, we declined to give *Boykin* retroactive application and held that in the absence of an allegation and the showing of ineffective counsel, we would conclude that the attorney provided full and adequate assistance. We are firm in our conviction that the defendant in the case before us entered his guilty plea voluntarily and that his plea would not have been altered by more inclusive advice from the court."

*Id.*, at 563–64.

*Goffner v. State*, (1979) 270 Ind. 562, 387 N.E.2d 1321, involved a 1961 pre-*Boykin* plea wherein the defendant contended that the trial court failed to advise him of the elements of second degree murder and the consequence of his plea. The supreme court stated that the case must be judicially reviewed according to pre-*Boykin* standards which are not so narrow. *Goffner, supra*, at 1323. The court may consider not only the record of the proceeding at which the plea was formally accepted, but also the entire range of surrounding circumstances, including any other proceedings and events in the same approximate time frame. *Id.* The court then determined that the previous court appearances, the reading of the applicable statute and charges, and the pre-sentence report, which contained statements made to the probation officer and police, were all sources which could and did supply the omitted advise-

ments at the time of the acceptance of the guilty plea.

The court concluded:

"It is clear from the foregoing that at the time he entered the plea, appellant was fully advised of his rights and understood the import of the charges as well as the consequences of his plea. Although the charges apparently were not read to him on the date his guilty plea was accepted, we think the series of proceeding and events *in toto* constitute sufficient evidence to support the finding of the trial court that he was advised of and understood the elements of the crime of second degree murder. The transcripts of the arraignment, the guilty plea proceeding and the pre-sentence report bear out this conclusion."

*Id.* at 1324.

*Woods v. State*, (1981) Ind.App., 426 N.E.2d 107, followed *Conley, Campbell* and *Goffner.* We have not found, nor have we been cited to cases in conflict therewith, or which modify or diminish those rulings.

■ We are of the opinion that *Campbell*, nearly identical on its facts, is controlling here. Absent an allegation and proof of ineffectual counsel, the presumption exists that Williams' attorney properly advised him. Further, under the rule in *Goffner*, other documents and events in the same approximate time frame may be considered. Here the waiver order for the same offense entered shortly prior to the plea of guilty contains a recitation of advice, with counsel present, of his rights. These surrounding events support the presumption that counsel sufficiently advised him.

*Issue III: Sufficiency of Waiver Order.*

■ Williams argues finally that the order waiving juvenile jurisdiction is deficient upon its face because it is merely a form order which merely sets out the general and conclusory language of the juvenile waiver statute then in force. Therefore, he contends the criminal court had no jurisdiction. We observe that no challenge to or appeal was made from that order

made 16 years ago. We first note that *Davis v. State*, (1975) 263 Ind. 327, 330 N.E.2d 738, holds that where a defendant does not show that all matters claimed were not known or were otherwise available to him on direct appeal, he cannot raise such an issue in a post-conviction proceeding. *Davis, supra*, at 742. We further note that in the case of *Twyman v. State*, (1984) Ind. 459 N.E.2d 705, the Indiana Supreme Court held that the jurisdiction of the trial court to which Williams refers is personal jurisdiction, not jurisdiction of the subject matter. Personal jurisdiction may be waived. *Twyman* contains the following language:

"It may be voidable for lack of personal jurisdiction, if the appellant has made a timely challenge to the courts having personal jurisdiction over him."

*Twyman, supra*, at 708.

We hold that Williams has waived any question of personal jurisdiction by failing to make a timely challenge.

The decision need not rest on *Twyman.* Reasons less specific than those reasons stated in this waiver order have been held adequate in *Redding v. State*, (1977) 175 Ind.App. 89, 370 N.E.2d 397. *See also Swinehart v. State*, (1976) 169 Ind.App. 510, 349 N.E.2d 224.

■ Authorities relied upon by Williams are *Atkins v. State*, (1972) 259 Ind. 596, 290 N.E.2d 441, and *Seay v. State*, (1975) 167 Ind.App. 22, 337 N.E.2d 489. Both are wholly distinguishable on their facts. *Atkins*, decided by a deeply divided court, involved a disorderly conduct charge growing out of some civil rights demonstration where the defendant had no record of prior arrests, and waiver was made solely because the defendant would become 18 before trial. In *Seay*, the order contained no specific allegation at all. The order here, like *Swinehart*, detailed a history of juvenile offenses. *Swinehart* also distinguishes *Atkins* and *Seay.*

We find that no error exists here.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.